# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FRAMPTON LIVING TRUST, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>RESIDEO TECHNOLOGIES, INC.; MICHAEL G. NEFKENS; and JOSEPH D. RAGAN III,<br><br>                    Defendants. | Case No. <u>0:19-cv-3133</u><br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Frampton Living Trust ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined herein), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Resideo Technologies, Inc. ("Resideo" or the "Company") press releases, U.S. Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.      This securities class action is brought on behalf of all persons or entities that purchased shares of Resideo's common stock between October 10, 2018, and October 22, 2019, inclusive (the "Class Period").  The claims asserted herein are alleged against Resideo and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5, promulgated thereunder.

## INTRODUCTION & BACKGROUND

2.      Resideo purports to be a leading global provider of comfort and security solutions primarily in residential environments.  The Company was formed through a spin-off from Honeywell International Inc. ("Honeywell") on October 29, 2018.[1]  The Company began trading under the ticker symbol "REZI" on the New York Stock Exchange ("NYSE") on October 29, 2018.  Honeywell touted that, after the spin-off, Resideo would be the market leader in home heating, ventilation and air conditioning controls, and security markets, as well as a global distributor of security and fire protection products.  As part of the spin-off, Resideo secured a license to continue using the Honeywell Home brand of products for 40 years.

3.      The Company, prior to and after the spin-off from Honeywell, operates through two segments: Products & Solutions (formerly Honeywell Home), and Global

---

[1]      On October 29, 2018, Honeywell's shareholders of record as of October 16, 2018 ("Record Date") received one share of the Company's common stock, par value $0.001 per share, for every six shares of Honeywell's common stock, par value $1.00 per share, held as of the Record Date, and cash for any fractional shares of the Company's common stock.

Distribution.  These segments have historically contributed approximately 48 and 52 percent, respectively, of Resideo's net revenues.

4.      Resideo's Products & Solutions segment is separated into the following categories:

(a)      Comfort, which consists of solutions and products for temperature and humidity control, water, air, telehealth, and related software;

(b)      Residential Thermal Solutions ("RTS"), which consists of solutions and products for boilers, gas water heating, heating ducts, and thermal adjacency; and

(c)      Security (which is still marketed and sold primarily under the Honeywell Home brand), which consists of products and solutions for security panels, sensors, peripherals, wire and cable, communications devices, video cameras, awareness solutions, cloud infrastructure, installation and maintenance tools and related software.

5.      The Company's Global Distribution segment, called ADI, is purportedly the leading wholesale distributor of security and low-voltage electronics products, which include security, safety, and audiovisual products and related accessories, including third-party products.

6.      Leading up to the spin-off, Resideo touted to investors its "bright future" and strong competitive posture, stating that the Company's "competitors right now are the ones that are concerned."  Just weeks after the spin-off, Resideo assured investors that the Company had a "Mature, Integrated Supply Chain" and that it was actively resolving the limited supply chain issues that arose following the spin-off.

7.     During the Class Period, Resideo continued to assure investors that the Company was poised to meet its 2018 guidance at the high end of its forecasted range, and more importantly, for 2019 the Company would achieve 4 percent or higher organic growth and approximately 13 percent earnings before interest, taxes, depreciation, and amortization ("EBITDA").  Further, while the Company acknowledged it had experienced operational disruptions (primarily administrative) in connection with the spin-off, Defendants repeatedly assured investors that any negative effects of the spin-off were largely "behind [them]" and reiterated their full-year 2019 guidance for the Company.  Resideo also told investors that there was strong demand for the Company's "connected" home products and that the Company remained competitive in the sale of Resideo's legacy nonconnected products.

8.     In truth, after the spinoff, Resideo continued to compete directly with its former parent, Honeywell, in the sale of Comfort products, including thermostats. Honeywell maintained an inventory of a key product line, and cannibalized Resideo's business.  Resideo focused on sales of newer model thermostats despite the popularity of the older model still being sold by Honeywell.

9.     In addition, Resideo's high-margin RTS business, which sells components to manufacturers of heating systems, faced supply chain issues that were driven by industry-wide declines.  Despite those declines, Resideo misled investors about its RTS business generally and about the Company's management of its supply chain in particular.

10.     Therefore, the Class Period representations by Defendants concerning the Company's business and financial condition, including its forecasted financial results, were each materially false and misleading when made because Defendants failed to disclose the following true facts, which were known to Defendants or recklessly disregarded by them:

(a)     The negative effects of the spin-off were more substantial and persistent than disclosed and had negatively affected the Company's sales, supply chain, and gross margins;

(b)     Resideo faced serious competition for its products, including competition from Honeywell; and

(c)     As a result of the foregoing, the Company's financial guidance lacked a reasonable basis and the Company was not on track to make its 2019 guidance as claimed.

11.     The truth about the issues plaguing Resideo were revealed through a series of disclosures, culminating with the reduction of the Company's long-reaffirmed 2019 guidance.

12.     First, on March 7, 2019, Resideo issued its financial results for the fourth quarter and full-year 2018.  On this date, the Company also announced that it was lowering its 2019 financial forecasts.  The Company further revealed that the profitability of certain business segments had been impacted by costs related to the spin-off.  This disappointing news caused Resideo shares to decline by over 23 percent on March 7, 2019.

5

13.     Second, on August 7, 2019, after the close of trading, Resideo issued its financial results for the second quarter of 2019, disclosing that the Company's earnings had come in below estimates.  The following day, on the Company's earnings call with analysts and investors, Defendants further revealed that Resideo was experiencing margin pressures due to product mix headwinds, including the sale of lower margin devices.  On this news, the Company's share price declined by 2.4 percent from its opening price on abnormally high trading volume.  As the market continued to digest the disappointing news, Resideo common stock further declined by approximately 3.7 percent on August 9, 2019, and declined by approximately 5.2 percent the following trading day on August 12, 2019.

14.     Finally, after the close of trading on October 22, 2019, Resideo released preliminary financial results for the third quarter, and surprised investors by announcing earnings that significantly missed estimates.  The Company also materially reduced its earnings guidance for 2019.  The drivers of these disappointing results were the lower sales of thermostats and the performance of the RTS business.  The Company also announced the replacement of Defendant Joseph D. Ragan III ("Ragan") in his role as Chief Financial Officer ("CFO") and Executive Vice President ("EVP") of Resideo.  In response to these disclosures, the price of Resideo stock fell $5.73 per share, a decline of over 37 percent.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder

(17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

16.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) because Resideo was headquartered in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

## PARTIES

17.     Plaintiff purchased Resideo common stock as described in the attached certification incorporated herein by reference and was damaged thereby.

18.     Defendant Resideo Technologies, Inc., is a Delaware corporation whose stock trades on the NYSE under the ticker symbol "REZI."  At the outset of the Class Period, the Company was headquartered in Golden Valley, Minnesota.  In early 2019, the Company relocated its headquarters to Austin, Texas.  As of November 1, 2019, Resideo had over 122 million shares of common stock outstanding, owned by hundreds or thousands of investors.

19.     Defendant Michael G. Nefkens ("Nefkens") was at all relevant times President and Chief Executive Officer ("CEO") of Resideo, as well as Chairman of the Company's Board of Directors.  On December 3, 2019, Resideo announced that Defendant Nefkens would be resigning, effective upon the appointment of a new CEO.

20.     Defendant Ragan was at all relevant times EVP and CFO of Resideo.  On October 22, 2019, Resideo announced Ragan's departure from the Company, effective November 6, 2019.

21.     Defendants Nefkens and Ragan are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Resideo, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS

22.     The Class Period begins on October 10, 2018, when Resideo issued a press release touting the strength of the Company's business, as well as its growth prospects:

> Resideo begins with an enviable market position, as a $4.7 billion business with a global addressable market of more than $35 billion that continues to grow thanks to favorable trends and consumer preferences. Our diversified revenue streams, strong segment profits and limited capital expenditure needs are just a few of the reasons Resideo has a bright future.

23.     Additionally on October 10, 2018, the Company held an investor showcase hosted by Defendants Nefkens and Ragan, during which Defendants provided background on Resideo, its products, operations, and financial prospects.  The accompanying slide presentation included a slide titled "2019 Full Year Financial Metrics," which projected that Resideo would reach 4 percent or higher organic growth, and achieve an approximately 13 percent adjusted EBITDA margin, in 2019.  During the presentation, Defendant Ragan reiterated that Resideo was poised to deliver organic growth in 2019:

> 2019, we are looking at revenue growth, organic revenue growth, at 4%. You've seen over the last few years, it has been 4% . . . . But what we're talking about for [20]19 is to continue that 4% growth, which will produce on a pre-indemnity basis, an adjusted EBITDA margin of 13% and post-indemnity, a 10% adjusted EBITDA margin.

24.     On October 11, 2018, *The Street* published an interview with Defendant Nefkens titled "Honeywell Spin-Off Resideo is Optimistic on Growth Even Amid Trade Tensions."  In the interview, Defendant Nefkens touted that Resideo was insulated from competition. Specifically, Nefkens stated: "I'm quite optimistic about our footprint and the ability to counter any trade issues . . . .  We manufacture close to our customers [and] [m]ost of our competitors manufacture in China.  So, the reality is when NAFTA got ratified I'm now feeling very good about our footprint.  My competitors right now are the ones that are concerned."

25.     On October 29, 2018, Resideo stock began trading on the NYSE under the symbol "REZI," opening at $28.00 per share.  The same day, the Company filed a Form 8-K with the SEC announcing amendments to the registration statement issued in

connection with the spin-off, which included the appointment of the Company's new Board of Directors and Officers.

26.     On October 30, 2019, Resideo issued a press release announcing the completion of the spin-off and that it was now a stand-alone, publicly traded company. The press release further lauded the Company's "long-standing relationships with professional dealers and contractors," and informed investors that "[i]n the coming months, Resideo plans to introduce new products and software to advance the smart home experience."

27.     On November 8, 2018, Resideo issued a press release announcing that members of the Company's management would present that day at the Baird 2018 Global Industrial Conference in Chicago, Illinois.  The presentation slides, which were filed with the SEC on Form 8-K, reiterated Resideo's "2019 Full Year Financial Metrics," including four percent or higher organic growth and an approximately 13 percent adjusted EBITDA margin.  In the presentation, Resideo further touted its "Strong Operational and Financial Performance with Consistent Growth and Margin Performance" and its "Mature, Integrated Supply Chain with Continued Application of Best-in-Class Honeywell Operating System" among the Company's "Key Investment Highlights."

28.     On November 13, 2018, after the market closed, Resideo issued a press release announcing its third quarter 2018 financial results (the "3Q2018 Press Release"). The 3Q2018 Press Release touted "4 Percent Reported Sales, Growth, with $1.2 Billion in Revenue," described the Honeywell spin-off as "Successful," and "Reaffirm[ed] 2018 guidance and 2019 outlook."  In the 3Q2018 Press Release, Defendant Nefkens was

quoted stating that the Company, "as part of Honeywell over the past three years demonstrates a well-run business that is ***on-track to deliver continued growth in 2018 and beyond***."[2]  Defendant Nefkens further touted the Company's "***clear vision to deliver our next generation growth plan for Resideo***."

29.    The 3Q2018 Press Release revealed, however, that the Products & Solution segment's "performance was impacted by temporary supply chain issues as a result of the spin-off, which Resideo is ***actively resolving***."

30.    Also on November 13, 2018, following the 3Q2018 Press Release, Oppenheimer issued a report titled "Resideo Technologies Reports 3Q18, Maintain Outperform."  The report discussed the Company's improved third quarter 2018 revenues year-over-year and that the Company had beaten Oppenheimer's estimates.  This favorable report described the "spin-off related supply chain headwinds" as "typical," giving weight to the fact that "***[m]anagement expects these temporary headwinds to subside quickly***."

31.    On November 14, 2018, Resideo held a conference call with analysts and investors to discuss the Company's third quarter 2018 financial results (the "3Q2018 Earnings Call").  On the 3Q2018 Earnings Call, Defendant Ragan attempted to ameliorate any potential concern related to the supply-chain issues disclosed in the 3Q2018 Press Release, stating in pertinent part:

> ***As many of you have already heard from Honeywell on their Q3 earnings call, we experienced some spin-related supply chain issues that temporarily increased our backlog and additional spin-related cost that***

---

[2] Unless otherwise noted, emphasis added throughout.

*negatively impacted our revenue and EBITDA for the quarter. We are actively addressing these supply chain issues, and we're already seeing product flows moving back towards normal volumes.*

*With the spin behind us, operationally, our team is focused and back on track.*

In response to Analyst questions regarding the supply-chain issues, Defendant Nefkens assured that any such issues would be fully resolved in the first quarter of 2019, stating in pertinent part:

So yes, so *I'll talk a little bit about the spin-related supply chain issues that we put out there because it did affect us in Q3, as expected*. I talked about these at Investor Day. Typically, what they are, are items – I'll just give you a really good example, *like most of them, believe it or not, are administrative items*. We had an example of customs-related issues where paperwork comes in under the Honeywell name, product news to actually be – come out under the Resideo name. Took a couple of days to do that. We also have some plant shifts that we're making in Europe as a result of the spin. So these are just items that we knew were in front of us. *We planned for it. In Q4, I can tell you right now we're already seeing volumes coming back to normal*. And I told the team and we're still looking out, there's still a few things we've got to make sure come through before we get clean. So I would tell you we're still seeing a few of those headwinds here in Q4, as expected. *And we'll be fully back and running* here *by Q1. Again, the reason that we're able to affirm our guidance at the top end of the range is because we're already working through these items and we're very comfortable that we're on the other side of it now*.

32.     Defendant Nefkens also touted demand for Resideo's connected products on the 3Q2018 Earnings Call, further stating that the "business [was] performing well," and poised for "steady growth" and "margin expansion," stating in pertinent part:

*We see strong drivers for demand, which we expect to continue from the growing demand for and adaptation of smart and connected devices* combined with the growing need for expertise to really help people make sense of these technologies and access them more easily. *Our business is performing well*. And *we expect the powerful combination of scale, steady*

12

**growth and market position will give us margin expansion and significant equity valuation uplift going forward**.

33.     On December 12, 2018, Resideo management spoke at the Imperial Capital Security Investor Conference in New York, New York.  Defendant Ragan touted the strength of Company's supply chain (which had adversely impacted the Company that very quarter), emphasizing the purported efficiency of Resideo's global factories, which had decreased from 50 to 18 over a ten-year period but doubled in revenue, stating in pertinent part:

> From a supply chain perspective, we have 18 factories globally. We have done a significant amount of work on the factory rationalization. 10 years ago, there were 50 factories and somehow Michael got from 50 to 18 and doubled the revenue, which is spectacular.
>
> **So the company is incredibly efficient from a manufacturing supply chain perspective**.

34.     The Class Period representations by Defendants concerning the Company's business and financial condition, including its forecasted financial results, were each materially false and misleading when made because Defendants failed to disclose the following true facts, which were known to Defendants or recklessly disregarded by them:

        (a)     The negative effects of the spin-off were more substantial and persistent than disclosed and had negatively affected the Company's sales, supply chain, and gross margins;

        (b)     Resideo faced serious competition for its products, including competition from Honeywell; and

(c)     As a result of the foregoing, the Company's financial guidance lacked a reasonable basis and the Company was not on track to make its 2019 guidance as claimed.

## THE TRUTH BEGINS TO EMERGE

35.     On March 7, 2019, Resideo issued a press release reporting its fourth quarter and full-year 2018 results (the "4Q2018 Press Release").  The 4Q2018 Press Release touted that Resideo's fourth quarter results were exceptional and at the high end of the forecasted range, in spite of the pre-spin performance issues.  In addition, Defendant Nefkens was quoted stating that any supply chain issues were mostly resolved, stating in pertinent part:

> "We delivered strong performance for the fourth quarter and full year, **despite the spin-related cost** base coming in higher than expected," said Mike Nefkens, president and CEO of Resideo. "**I am proud of our team's accomplishments as we successfully executed the spin and met or exceeded financial expectations**.
>
> **The disruption from the spin is mostly behind us and we have a solid team in place that delivered great results in 2018**, and we are ready to do even more."

36.     The 4Q2018 Press Release revealed, however, that the Products & Solutions segment's "**profit decreased 20 percent, impacted by one-time spin-related costs**."  Further, the 4Q2018 Press Release revealed that the Company was reducing its previously issued full-year 2019 guidance for revenue growth from a range of 4 to 5 percent to a range of 2 to 5 percent.

37.     That same day, Resideo held a conference call with analysts and investors to discuss the Company's fourth quarter 2018 financial results (the "4Q2018 Earnings

Call"). During the 4Q2018 Earnings Call, Defendant Nefkens told analysts and investors

that the spin-off was on or ahead of schedule, stating as follows:

> *I also feel really good that most of the disruption from the spin is now behind us* . . . .
>
> *As I've shared in the past, this is my third spin, and we are on schedule, and in some cases, ahead of schedule, when I compare to previous spins I've been part of.*
>
> * * *
>
> *While our spin-related cost base came in higher than expected and put some downward pressure on our near-term EBITDA, we are already taking action to optimize the cost base and operating footprint we inherited from the spin.*
>
> * * *
>
> *First, we came out of the spin on time and delivered on the high end of the range for 2018.* This includes revenue, EBITDA and cash. This team knows how to execute.

38.     In response to analysts questions on the 4Q2018 Earnings Call over how

the guidance cut "*was not exactly what [they] were expecting*," Defendant Nefkens

responded positively and touted Resideo's upcoming cost-cutting initiatives:

> *As you guys know with a spin, this effectively is the first time that we are having all of our costs under our control. So there's a lot in here. And we are at a strategic inflection point. I would tell you that we are at or ahead of where I expected to be.* This market is moving really, really fast. And my biggest concern in the past is – when I've been asked, has been our ability to operate at speed versus industrial speed, and I didn't want to wait. I didn't want to just sit around and just keep going in [20]19. So we made the decision to be more aggressive on cost-cutting, which we're going to go do, which we've said here. I feel that will make us a leaner, faster company. And we've made the decision to pull some investments forward from 2020 into [20]19, and that's why we're investing more. So – and this is not about just helping us keep where we're at. This is about helping us get ahead.

39.     The market reacted negatively to Resideo's unexpected lowered guidance, causing Resideo's stock to decline by over **_23 percent_**, or $5.79 per share, closing at $18.96 on March 7, 2019.  The Company's stock price, however, remained inflated as the Company continued to deceive investors about the impact of the spin-off, the competitive landscape, and the Company's ability to achieve its 2019 guidance.

40.     Despite the initial negative information disclosed on March 7, 2019, Defendants continued to mislead the market.  On May 8, 2019, the Company issued a press release announcing its first quarter 2019 financial results (the "1Q2019 Press Release").  In the 1Q2019 Press Release, Defendants stated that the Company was "**_off to a great start_**" in both business segments, that cost saving initiatives were on track, reaffirmed the Company's 2019 guidance, and stated that EBITDA was expected at the high end of guidance, stating in pertinent part:

> Reiterating the full-year 2019 guidance for revenue growth of 2-5% and **_Adjusted EBITDA of $410 - $430 million at the upper end of the range_**.
>
> \* \* \*
>
> **_We're off to a great start in 2019 with strong Q1 revenue performance in both our Global Distribution and Products & Solutions businesses_**.
>
> \* \* \*
>
> **_We are on track with our previously announced cost reduction program and expect $50 million in annualized savings by 2020. With continued confidence in our ability to execute and positive first-quarter results, we are reiterating our full-year 2019 guidance to reflect revenue growth of 2-5% and Adjusted EBITDA at the upper end of the range of $410 to $430 million_**.

41.     On May 9, 2019 Resideo held a conference call with analysts and investors to discuss the Company's first quarter 2019 financial results (the "1Q2019 Earnings Call").  During the 1Q2019 Earnings Call, Defendant Nefkens assured investors that the supply chain issues were continuing to improve, stating in pertinent part:

> Growth in the quarter was solid across our core business with high growth in our Pro Security business, led by the launch of our next-generation residential pro security platform. Volume shipments began for our largest customer in February, and we expect to be at full capacity across our customer base by the first half of 2020. . . .
>
> Next, in our Comfort business, we celebrated the award-winning launch of multiple products at CES, including our T9 and T10 smart home thermostats. ***The product segment also saw tangible improvement in supply chain execution as we work through spin-related headwinds from the past 2 quarters***.
>
> * * *
>
> So net-net, a solid start to our investment initiatives and cost programs. ***We're also starting to move beyond some of the supply chain and cost spin burdens***.

Further, Defendant Ragan reaffirmed Resideo's 2019 guidance on the basis that they were able to "gather more visibility into 2019," stating in pertinent part:

> ***We've reiterated our guidance for growth in a range of 2% to 5% as we gather more visibility into 2019. As I mentioned, we are guiding to the upper end of the adjusted EBITDA range of $410 million to $430 million***.

42.     Finally, during the 1Q2019 Earnings Call, Defendant Nefkens, in regards to Resideo's RTS business, touted the Company as having "a strong and leading market position and [is] growing well above market."  In addition, he stated that "***for 2019, we're confident in our growth guidance in the upper end of our EBITDA guidance, and we remain optimistic***."

43.     On June 6, 2019, Defendant Ragan represented Resideo at the Robert W. Baird Global Consumer, Technology & Services Conference.  During the conference, Defendant Ragan stated that the Company "continue[s] to take share there" and it has "a compelling position in the nonconnected space."  With respect to its RTS business, Defendant Ragan touted it as "a great business for us."  Further, Defendant Ragan blamed the decline in performance of the Company's RTS business on "comps year-over-year [that] were tough" and "so the comps don't look as good as we would like."  Finally, Defendant Ragan assured investors that "that's really just a temporary issue."

44.     The truth about the adverse issues impacting Resideo began to fully materialize upon release of the Company's financial results for the second quarter of 2019.  On August 7, 2019, after the close of market, the Company issued a press release announcing its second quarter 2019 financial results (the "2Q2019 Press Release").  The 2Q2019 Press Release revealed that Resideo's earnings had come in below estimates, yet still affirmed previous 2019 guidance.  With regards to segment-specific EBITDA, the 2Q2019 Press Release revealed that Products & Solutions' "***EBITDA was down 36% as a result of unfavorable product mix, production cost increases, and the impact of acquisition expenses***."  Instead of addressing these issues in the 2Q2019 Press Release, however, Defendant Nefkens was instead quoted lauding Resideo's new products, including its connected thermostats, its recent acquisitions, as well as the Company's growth initiatives, stating in pertinent part:

> Our momentum continues with strong top-line growth during the second quarter, spread evenly across our ADI Global Distribution and Products & Solutions businesses," said Mike Nefkens, president and CEO of Resideo.

18

"In the first half of the year, we launched several new products including the T9 and T10 smart thermostats and an industry-leading universal defrost control for heat pumps. We also completed acquisitions of LifeWhere and technology from Whisker Labs. Our three acquisitions to date, including Buoy Labs, put us at the forefront of whole home monitoring across the physical home networks of air, water, energy and security. *The Resideo team is focused on executing our organic and inorganic growth strategies, as well as our cost reduction programs, as we continue to drive growth and long-term value creation for shareholders*.

45.     On August 8, 2019, before market hours, Resideo held a conference call with analysts and investors to discuss the Company's financial results for the second quarter of 2019 (the "2Q2019 Earnings Call").  On the 2Q2019 Earnings Call, Defendant Nefkens revealed that Resideo was experiencing sales slowdowns and margin pressure, stating in pertinent part:

> *Second, for our residential thermal solutions business, as previously noted, we've seen a slowdown in the OEM segment, primarily water heaters*.
>
> As a result, we are adjusting the market growth of the RTS segment down to reflect changes in the market. Even though that market has slowed, we continue to win in that segment. So closing out on the chart, outside of security DIY, where we really don't play, we have a solid market position in all of the segments we plan, and our objective is to further accelerate our growth in these segments.
>
> Looking at P&S segment adjusted EBITDA, *both comfort and security are seeing margin pressures due to product mix headwinds, specifically the ramp up of our new security platform and lower margins on connected thermostats*. We are working to offset these with cost containment and supply chain and sourcing process improvements.

Defendant Ragan also informed investors that they "*expect[ed] margin pressure to continue*."

46.     Defendants nevertheless continued to affirm guidance targets and attempted
to assuage investor concern by touting that based on the "strong" quarter, the Company
was "finally starting to see some normalcy after all the spin work, and [were] pleased
with the progress on . . . strategic initiatives."  Thus, Resideo shares remained artificially
inflated.

47.     The negative news revealed in the 2Q2019 Press Release and Earnings
Call, however, sparked a decline in the price of Resideo shares.  On August 8, 2019, the
Company's share price declined by 2.4 percent from its opening price of $17.50 per share
on high trading volume of 3.7 million, closing at $17.08 that same day.  As the market
continued to digest the disappointing news, Resideo common stock further declined over
the next two trading days.  Specifically, Resideo shares declined by approximately 3.7
percent on August 9, 2019, closing at $16.45 per share, and declined by approximately
5.2 percent the following trading day, closing at $15.59 per share on August 12, 2019.

48.     On August 13, 2019, news sources reported that Oppenheimer had
drastically slashed its price target for Resideo to $20 from $30 following the release of
Resideo's second quarter 2019 financial results.  The Oppenheimer analyst attributed the
large price target cut to threats of a permanently lower margin profile in Security, as well
as increased investment spend and near-term headwinds created by the transition from
high-margin non-connected devices to lower-margin, connected devices.

49.     The Class Period representations by Defendants concerning the Company's
business and financial condition, including its forecasted financial results, were each

materially false and misleading when made because Defendants failed to disclose the

following true facts, which were known to Defendants or recklessly disregarded by them:

(a)    The negative effects of the spin-off were more substantial and

persistent than disclosed and had negatively affected the Company's sales, supply chain,

and gross margins;

(b)    Resideo faced serious competition for its products, including

competition from Honeywell; and

(c)    As a result of the foregoing, the Company's financial guidance

lacked a reasonable basis and the Company was not on track to make its 2019 guidance

as claimed.

## **THE FULL TRUTH EMERGES**

50.    On October 22, 2019, after the close of market, Resideo issued a press

release announcing its financial results for the third quarter of 2019 (the "3Q2019 Press

Release").   Resideo reported preliminary third quarter EBITDA of $77–79 million,

severely missing analyst expectations of EBITDA in the range of $98–101 million.  The

Company also reduced its 2019 full year EBITDA guidance to a range of $330–350

million, down significantly from the previously expected revenue of $410–430 million.

The Company also announced the sudden departure of Defendant Ragan from his role as

CFO and EVP at Resideo.

51.    The 3Q2019 Press Release further elaborated that the "Products &

Solutions segment experienced revenue decline in certain product families of the Comfort

business and in its Residential Thermal Solutions (RTS) gas combustion business." More specifically, the 3Q2019 Press Release explained that:

> The Comfort business declines were primarily due to lower sales volumes in non-connected thermostats. We believe a poor pre-spin cutover from the prior generation of non-connected thermostats to the T-Series line impacted the adoption of mid-level T-Series thermostats. The cutover effects became markedly more pronounced in the third quarter after the prior generation of non-connected thermostats were discontinued.

52.     Following these disclosures, Oppenheimer downgraded the Company's stock from "outperform" to "perform," and Imperial Capital reduced its price target for Resideo stock to $12.00 from $25.00.

53.     On this news, the price of Resideo common stock fell precipitously by ***over 37 percent***, or $5.73 per share, closing at $9.50 per share on October 23, 2019.

54.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**LOSS CAUSATION/ECONOMIC LOSS**

55.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Resideo's common stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Resideo's stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Resideo's stock during the Class Period,

Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Resideo during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Resideo and their families and affiliates.

57.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of November 1, 2019, Resideo had over 122 million shares of common stock outstanding, owned by hundreds or thousands of investors.

58.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

        (a)     Whether Defendants violated the Exchange Act;

        (b)     Whether Defendants omitted and/or misrepresented material facts;

        (c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)      Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)      Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)      Whether Defendants' conduct impacted the price of Resideo common stock;

(g)      Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)      The extent of damage sustained by Class members and the appropriate measure of damages.

59.      Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

60.      Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

61.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

62.      Resideo's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

63.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Resideo who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

64.     At all relevant times, the market for Resideo's common stock was an efficient market for the following reasons, among others:

(a)     Resideo common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Resideo filed periodic public reports with the SEC and NYSE;

(c)     Resideo regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and

through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Resideo was followed by securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

65.     As a result of the foregoing, the market for Resideo common stock promptly digested current information regarding Resideo from all publicly available sources and reflected such information in the price of Resideo common stock.  Under these circumstances, all purchasers of Resideo common stock during the Class Period suffered similar injury through their purchase of Resideo common stock at artificially inflated prices and the presumption of reliance applies.

66.     Further, to the extent that Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Resideo common stock at artificially inflated prices.

69.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and

(c)     engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Resideo common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

70.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

71.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to

make the statements made, in light of the circumstances under which they were made, not misleading.

72.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Resideo's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

73.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Resideo's common stock. Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Resideo's common stock had been artificially inflated by Defendants' fraudulent course of conduct.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

75.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

76.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

28

77.     The Individual Defendants acted as controlling persons of Resideo within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Resideo, the Individual Defendants had the power and ability to control the actions of Resideo and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

D.     As to the claims set forth under the Securities Act, awarding rescission or a recessionary measure of damages; and

      E.      Awarding such equitable, injunctive or other further relief as the

Court may deem just and proper.

## JURY DEMAND

    Plaintiff demands a trial by jury.

DATED: December 20, 2019

                 */s/ Joseph C. Bourne*

                 Melissa S. Weiner (#0387900)
                 Joseph C. Bourne (#0389922)
                 **PEARSON, SIMON & WARSHAW, LLP**
                 800 LaSalle Avenue, Suite 2150
                 Minneapolis, Minnesota 55402
                 Telephone: (612) 389-0600
                 Facsimile: (612) 389-0610
                 mweiner@pswlaw.com
                 jbourne@pswlaw.com

                 **LABATON SUCHAROW LLP**
                 Christopher J. Keller*
                 Eric J. Belfi*
                 Francis P. Mcconville*
                 140 Broadway
                 New York, New York 10005
                 Telephone: (212) 907-0700
                 Facsimile: (212) 818-0477
                 ckeller@labaton.com
                 ebelfi@labaton.com
                 fmcconville@labaton.com

                 *Counsel for Plaintiff Frampton Living Trust*

                 *\*Pro Hac Vice Applications Forthcoming*